574 P.2d 97 (1977)
Elizabeth G. MUDD and Clarence R. Mudd, Plaintiffs-Appellants,
v.
Lugene A. DORR, Defendant-Appellee.
No. 76-702.
Colorado Court of Appeals, Division I.
September 15, 1977.
Rehearing Denied October 13, 1977.
Certiorari Denied January 16, 1978.
*98 Mitchell Benedict, III, Zarlengo, Mott & Zarlengo, Reed L. Winbourn, Denver, for plaintiffs-appellants.
Johnson & Mahoney, P. C., Dale S. Carpenter, III, Denver, for defendant-appellee.
BERMAN, Judge.
Elizabeth and Clarence Mudd brought this medical malpractice action against Dr. Lugene Dorr, seeking damages suffered as *99 a result of Dr. Dorr's alleged negligent leaving of a cottonoid sponge in Mrs. Mudd during an operation, and as a result of Dr. Dorr's alleged failure to inform her of the risks involved in the surgical procedures. At the close of trial, the court partially granted defendant's motion for a directed verdict and dismissed plaintiff's negligence claim against the doctor. The court submitted the remaining issue concerning informed consent to the jury which found in defendant's favor.
Asserting that the trial court erred in refusing to instruct the jury on the doctrine of res ipsa loquitur and in giving erroneous informed consent instructions to the jury, the Mudds appeal. We reverse.
Following an injury to her back, Mrs. Mudd was referred to Dr. Dorr who diagnosed the extent of her injury by means of a myelogram and thereafter performed a laminectomy on her to correct the difficulty.
During the course of the laminectomy cottonoid sponges were used to retract sensitive disc tissues. The sponges contained a radiopaque marker, intended to show upon x-ray, and were attached to strings which extended outside the patient during surgery to reveal the number and location of the sponges then in use. Dr. Dorr used two to four of the sponges at a given time during the laminectomy, and he personally placed the sponges as needed.
Toward the end of the operation, one of the assisting nurses informed the doctor that she had earlier observed that one of the strings removed from the patient was no longer attached to its cottonoid sponge. Upon being informed of the missing sponge, Dr. Dorr instructed the circulating nurse and the scrub technician to recount the sponges. The surgical team explored the incision and searched the operating room to no avail. An x-ray was taken in an attempt to locate the sponge by its radiopaque marker. Dr. Dorr, his assistant, and the radiologist who had taken the x-ray examined the x-ray, but were unable to see the marker. The doctor then closed the incision and sent Mrs. Mudd to the recovery room.
Several days later Mrs. Mudd began experiencing pain greater than that generally associated with the type of surgery she had undergone. Additional x-rays, ordered by Dr. Dorr, revealed the missing sponge, which was then removed in another surgical procedure.

I.
In partially granting defendant's motion for a directed verdict on the issue of whether defendant was negligent in leaving the cottonoid sponge in Mrs. Mudd's body, the trial court held that expert testimony was necessary to show that Dr. Dorr deviated from the standards of care required of orthopedic surgeons in the Denver area at the time in question. The court also declined to apply the doctrine of res ipsa loquitur. Mrs. Mudd asserts, however, that under the facts present here, she was not required to present expert testimony and that she presented a prima facie case of negligence against the doctor under the doctrine of res ipsa loquitur. We agree.
Expert medical testimony is generally required to establish negligence on the part of a physician in his care or treatment of a patient. Smith v. Curran, 28 Colo.App. 358, 472 P.2d 769 (1970). However, "where the negligence of the physician is so apparent or the matter under investigation so simple that laymen are equally as able as experts to pass upon it . . . expert testimony is not required as part of the prima facie case." Smith v. Curran, supra. See Daly v. Lininger, 87 Colo. 401, 288 P. 633 (1930).
Facts suggesting the latter form of medical malpractice may present a suitable case for application of the doctrine of res ipsa loquitur. Kitto v. Gilbert, Colo. App., 570 P.2d 544 (1977); see Adams v. Leidholdt, Colo.App., 563 P.2d 15 (1976), cert. granted, April 25, 1977. When applicable, the res ipsa loquitur doctrine creates a rebuttable presumption of negligence with regard to a particular unexplained harm, sufficient to withstand a motion for a *100 directed verdict. Graf v. Tracy, Colo. 568 P.2d 467 (1977); Weiss v. Axler, 137 Colo. 544, 328 P.2d 88 (1958); Barnes v. Frank, 28 Colo.App. 389, 472 P.2d 745 (1970). To justify instruction on res ipsa loquitur, the evidence must demonstrate (1) the occurrence of a harmful event ordinarily not occurring in the absence of someone's negligence (2) caused by an instrumentality within the exclusive control of the defendant (3) without any voluntary contribution by the plaintiff (4) under circumstances such that evidence explaining the event causing the harm is more accessible to the defendant than to the plaintiff. Hilzer v. MacDonald, 169 Colo. 230, 454 P.2d 928 (1969); Kitto v. Gilbert, supra.
The doctor argues that the fact that the misplaced sponge was not attached to any string when finally retrieved "suggests" that the adhesive used in its manufacture was defective. From this he argues that control of the instrumentality of harm was not exclusive with him, but shared with the manufacturer or the procuring hospital. However, the record reveals no evidence of such a defect, and suggestions in the briefs of counsel do not rise to the dignity of supplying such proof. Genua v. Kilmer, Colo.App., 546 P.2d 1279 (1976). Accordingly, we conclude that Dr. Dorr, being in charge of Mrs. Mudd's operation as "captain of the ship," see Beadles v. Metayka, 135 Colo. 366, 311 P.2d 711 (1957); cf. Adams v. Leidholdt, supra, had exclusive control of the instrumentality of harm, the cottonoid sponge.
Moreover, since Mrs. Mudd was unconscious during the operation, there was no contributory fault on her part and the true explanation of the event was more accessible to the defendant physician than to her. The determinative issue as to the res ipsa loquitur doctrine's application here thus becomes whether expert testimony is required to show that the event of leaving a sponge within a patient during surgery is one not normally occurring in the absence of negligence.
While no Colorado decision has reached that precise question, the great majority of courts addressing the issue have applied the doctrine of res ipsa loquitur and have submitted the issue of negligence to the jury without expert testimony. Annot., 10 A.L. R.3d 9 (1966); see, e. g., Easterling v. Walton, 208 Va. 214, 156 S.E.2d 787 (1976); Hestbeck v. Hennepin County, 297 Minn. 419, 212 N.W.2d 361 (1973); Ales v. Ryan, 8 Cal.2d 82, 64 P.2d 409 (1936). Dean Prosser has explained that authority, stating:
"There are . . . some medical and surgical errors on which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care. When an operation leaves a sponge in the patient's interior. . . the thing speaks for itself without the aid of any expert's advice." W. Prosser, Torts § 39, (4th ed. 1971).
We find this reasoning persuasive. Accordingly, we hold that when, during the course of surgery, a foreign object such as a sponge is lost in a patient, a prima facie case of negligence is made out under the doctrine of res ipsa loquitur, and the burden falls upon the surgeon to prove that because of the general nature or particular circumstances of the surgery, such apparent misfeasance was in fact not negligent.[1]Cf. Daly v. Lininger, supra.
Dr. Dorr argues, however, that when he discovered that the cottonoid sponge was missing, he acted reasonably and in conformity with community medical standards in searching for it. He asserts that the trial court correctly concluded that his abandoning that search was based on his medical judgment, a matter not within the jury's competence, and that Mrs. Mudd's condition at the time was such that any prudent surgeon would have closed the incision.
However exhaustive Dr. Dorr's search after discovery of the sponge's disappearance, *101 and however exemplary his decision to close without its retrieval, the fact remains that when Mrs. Mudd left his care, a sponge remained within her body. The measures taken by Dr. Dorr and his surgical term after losing the cottonoid sponge in no way obviate the doctor's failure initially to take precautions sufficient to prevent the loss. See Hestbeck v. Hennepin County, supra. Accordingly, since the evidence in this case established all requisite conditions, the trial court's refusal to instruct on the doctrine of res ipsa loquitur and its direction of a verdict for defendant because of plaintiff's failure to present expert testimony was error.

II.
The trial court submitted to the jury the question of whether Mrs. Mudd gave an informed consent to the myelogram procedures or surgeries performed on her by Dr. Dorr. Over the objection of plaintiff, the court gave the following instruction:
"In considering whether the defendant doctor in his care and treatment of the plaintiff's injury or disease exercised ordinary care, you cannot set up a standard of your own, but must be guided in that regard solely by the testimony of the physicians, and if you are unable to determine from the testimony of the physicians, what constituted ordinary care and skill under, the circumstances of this case, there would be a failure of proof upon the only standard for your guidance, and the evidence would be insufficient to warrant any verdict."
Asserting that the giving of this instruction was prejudicial error, plaintiffs contend that the jury verdict for defendant must be set aside. We agree.
In Colorado, a plaintiff suing on an informed consent claim need only present evidence that because of the failure of her physician to warn of inherent risks, she was uninformed when she gave consent to medical procedures or surgical techniques. Once the patient evinces that she was uninformed, the physician defendant has the burden to go forward and by expert testimony demonstrate that his failure to disclose was in conformity with community medical standards. Hamilton v. Hardy, supra; Stauffer v. Karabin, 30 Colo.App. 357, 492 P.2d 862 (1971).
The instruction challenged here, however, states that unless there is expert testimony concerning what constitutes the standard of care of a reasonably prudent physician, the plaintiff cannot prevail. Such an instruction erroneously implies that the patient has the burden of establishing community professional standards.
In the instant case, Mrs. Mudd testified that Dr. Dorr did not inform her of the risks or dangers associated with the myelogram procedure or surgeries which he performed on her. The doctor's testimony that he did not specifically remember what he told her about the risks involved did not contradict this evidence. Consequently, under Hamilton and Stauffer, supra, if the doctor failed to establish that his failure to disclose conformed with the medical standards of the community, Mrs. Mudd would be entitled to a judgment as a matter of law.
In such circumstances, the instruction tendered by the trial court to the jury was misleading and prejudicial. Accordingly, the verdict of the jury on the issue of informed consent must be set aside.
The judgment is reversed and the cause remanded for a new trial in accordance with the views expressed herein.
COYTE and KELLY, JJ., concur.
NOTES
[1] If leaving such objects within a patient's body during a particular surgery were to be reasonably expected, the surgeon should inform the patient prior to the operation of the existence and consequences of that risk. See Hamilton v. Hardy, Colo.App., 549 P.2d 1099 (1976).